FILED
2024 Sep-04 PM 03:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| BALANCED BRIDGE FUNDING, LLC f/k/a THRIVEST SPECIALTY FUNDING LLC, | ) ) ) ) ) | |
| Plaintiff, | ) ) | 7:24-cv-00947-LSC |
| v. | ) ) | |
| DANIELLE ELISE KIMBROUGH, | ) ) ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| IRVING SPIKES, by and through his Wife and next friend, DANIELLE SPIKES, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 7:24-cv-00971-LSC |
| BALANCED BRIDGE FUNDING, LLC f/k/a THRIVEST SPECIALTY FUNDING LLC, | ) ) ) ) ) | |
| Defendant. | ) | |

## Memorandum of Opinion and Order

Before this Court is Plaintiff Balanced Bridge Funding, LLC's ("Balanced Bridge") Motion for Temporary Restraining Order and for Reconsideration of

scheduling (Doc. 24) against Defendant Danielle Kimbrough, who will be referred to as "Danielle Spikes" for the purposes of this order.[1]

Background

Irving Spikes, a former player for the Miami Dolphins, was diagnosed with moderate dementia in September 2016. (Doc. 3 ¶ 3; Doc. 19 ¶ 2; Doc. 19-1 ¶ 2-4). He then qualified for a class action award in *In re: National Football League Player's Injury Litigation*, No. 12-02323. (Doc. 3 ¶ 3).

Balanced Bridge "provides non-recourse, post-settlement funding to plaintiffs and members of class action settlements by purchasing settlement or award proceeds." (Doc. 1 ¶ 2). In December 2016, Balanced Bridge entered an agreement with Irving Spikes based on his forthcoming award in the *National Football League Player* class action. *Id.* at ¶ 4. Per the agreement, Balanced Bridge paid Irving Spikes $261,317.30 in exchange for "'all rights, title, benefits and interests'" in Irving Spikes's class action award until Irving Spikes fully repaid the loan[2]. *Id.*

---

[1] In her Answer, Danielle Spikes asserts Balanced Bridge wrongly named her "Danielle Kimbrough" in its Complaint. (Doc. 14 ¶ 1).

[2] In its Complaint, Balanced Bridge does not describe the agreement with Irving Spikes as a loan. Rather, Balanced Bridge claims that by paying Irving Spikes $261,317.30, Balanced Bridge purchased the property rights to the class action award. (Doc. 1 ¶ 2). According to Balanced Bridge, it would retain the property rights to the class action award until Irving Spikes paid Balanced Bridge the $261,317.30 principal plus a "19% per annum investment return thereon accruing and compounding monthly." (Doc. 17-1 ¶ 2).
In Alabama, "the form of a transaction will never preclude inquiry into its real nature, but in all cases the intention of the parties must control, irrespective of form." *Andress v. Parish*, 239 Ala. 67, 69 (Ala. 1940) (quoting 41 Corpus Juris § 64). Under Alabama common law, "a deed of conveyance of land absolute and unconditional upon its face but intended and understood by the parties to be merely a security for the payment of a debt, will be treated in equity as a mortgage, conferring upon the parties the relative rights and remedies of a mortgagor and mortgagee, and

In February 2024, Irving Spikes was approved for a $2.2 million class action award. *Id*. Balanced Bridge then entered a "pay off agreement" whereby Balanced Bridge gave Irving Spikes a $33,223.16 rebate for Irving Spikes's promise to "use his best efforts to" promptly repay Balanced Bridge. *Id*. at ¶ 4. As a result of this pay off agreement, Irving Spikes owed Balanced Bridge $1,041,235.04. *Id*.

Irving Spikes received the balance of his class action award as a check for $1,365,379.72 in May 2024. *Id*. On June 4, 2024, Balanced Bridge, Irving Spikes, Danielle Spikes, and their counsel spoke on the phone. *Id*. In that phone call, Danielle Spikes stated that "more than half" of the class action award had already been spent to "satisfy other obligations" and "only $638,000 of the [class action award] remained." *Id*. Irving Spikes and Danielle Spikes offered Balanced Bridge $680,000—the $638,000 allegedly remaining in Irving Spikes's bank account and $42,000 being held by Irving Spikes's attorney—as full satisfaction of the payoff agreement. *Id*. Balanced Bridge accepted the offer and Irving Spikes's attorney

---

nothing more." *Andress*, 239 Ala. at 69. *See also Smith v. Player*, 601 So.2d 946, 949 (Ala. 1992) (finding parties intended a deed to operate as a security interest, rather than an "outright sale," based on the parties' subsequent conduct).

Applying Alabama law to this case, based on the limited evidence before the Court, it seems the agreement between Balanced Bridge and Irving Spikes was a loan. The heart of their agreement was this: Balanced Bridge paid Irving Spikes $261,317.30 and Irving Spikes agreed to repay Balanced Bridge the $261,317.30 plus accrued interest. Irving Spikes's conduct does not suggest an intention to convey property rights to the class action award to Balanced Bridge. For example, the class action award was still paid to Irving Spikes, not to Balanced Bridge. (Doc. 1 ¶ 4). Additionally, upon receiving the class action award, Irving Spikes satisfied other outstanding debts. *Id*. at ¶ 5. Further, Balanced Bridge did not demand the entire amount of the class action award. *Id*. at ¶ 3. Based on these facts, it appears there was not mutual agreement to convey *all the* property rights in the class action award. At most, Balanced Bridge had a security interest in the class action award.

wired $42,000 to Balanced Bridge on June 4, 2024 and Irving Spikes wired $638,000 to Balanced Bridge on June 5, 2024. *Id.* at ¶ 6.

Balanced Bridge then commenced arbitration against Irving Spikes alleging the June 4 agreement to accept $680,000 as full satisfaction was void for duress and fraud. *Id.* During arbitration, Balanced Bridge learned that Irving Spikes had more than $638,000 in his bank account on June 4, 2024. *Id.* Balanced Bridge also learned that Irving Spikes transferred $470,000 to Danielle Spikes's bank account on June 4 and $40,000 to Danielle Spikes's bank account on June 17. *Id.*

In this action against Danielle Spikes, Balanced Bridge asserts property rights under its agreement with Irving Spikes to the $510,000 transferred from Irving Spikes to Danielle Spikes in June 2024. Balanced Bridge alleges the transfers to Danielle Spikes were fraudulent transfers under Alabama Fraudulent Transfer Act ("AFTA") (Ala. Code § 8-9A-1 et seq.) and Alabama Uniform Voidable Transaction Act ("AUVTA") (Ala. Code § 8-9B-1 et seq.).

<u>Motion for Reconsideration</u>

The Motion for Reconsideration asks the Court to reschedule the hearing for the pending Motion for Preliminary Injunction (Doc. 3) to September 5, 2024. The Motion for Preliminary Injunction was filed on July 16, 2024. The hearing at issue is currently scheduled for October 3, 2024 to coincide with the completed briefing

on the member case's pending Motion to Compel Arbitration. (Doc. 20). In requesting the reconsideration, Balanced Bridge argues the preliminary injunction presents "time-sensitive issues." (Doc. 24 ¶ 1). Specifically, Balanced Bridge is concerned that Danielle Spikes will dispose of the funds that are the subject of the preliminary injunction before the hearing is held. Balanced Bridge argues the Motion to Compel Arbitration is "unrelated" to the Motion for Preliminary Injunction. (*Id.* at ¶ 2).

Balanced Bridge does not direct the Court to a timeline for a preliminary injunction hearing required by statute or the Federal Rules of Civil Procedure.

The Motion for Reconsideration is DENIED.

Motion for Temporary Restraining Order

Ordinarily, preliminary injunctions are decided after initial discovery whereas temporary restraining orders are issued before discovery and can be without notice to the non-moving party. *See* Fed. R. Civ. P. 65. The appropriate time for a temporary restraining order in this case passed without one being sought, but Balanced Bridge arguably has now requested a temporary restraining order in its Motion for Reconsideration filed on August 23, 2024. (Doc. 24). Specifically, Balanced Bridge asks the Court to "issue a temporary restraining order" requiring Danielle Spikes to

"preserve the $510,000 at issue" until the pending Motion for Preliminary Injunction is decided. *Id*. at ¶ 2.

Temporary restraining orders and preliminary injunctions are "extraordinary remed[ies]," for which courts "'should pay particular regard for the public consequences' of granting." *Sensible Loans Inc. v. Block Indus. Inc.*, 5:20-cv-1512-LCB, 2022 WL 17541011, at *2 (N.D. Ala. Dec. 8, 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). A party seeking a temporary restraining order or a preliminary injunction must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) entry of relief would not be adverse to the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995). Because the purpose of prejudgment relief is to maintain the status quo so that "the court [can] render a meaningful decision on the merits," when issuing prejudgment relief, the court considers the potential harm "which might occur in the interval between ruling on the preliminary injunction [or temporary restraining order] and trial on the merits." *United States v. Lambert*, 695 F.2d 536, 540 (11th Cir. 1983). *See Walker v. Countrywide Home Loans, Inc.*, No. 1:17-cv-3052, 2017 WL 8942720 at *2 (N.D. Ga. Nov. 27, 2017) (considering the potential harm between deciding the temporary

restraining order and the trial on the merits). An injury is irreparable "only if it cannot be undone through monetary remedies" and is "actual and imminent," not "remote [or] speculative." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir. 1989).

First, as to Balanced Bridge's likelihood of success on the merits. In its complaint against Danielle Spikes, Balanced Bridge seeks money damages for alleged torts (conversion, aiding and abetting breach of fiduciary duty, and unjust enrichment), avoidance of transfer and injunction for alleged violation of AFTA and AUVTA, and a permanent injunction imposing a constructive trust. Prejudgment relief, such as the temporary restraining order sought here, cannot be used to protect a potential recovery of money damages. See *Noble Prestige Limited v. Galle*, 83 F.4th 1366, 1382 (11th Cir. 2023) (quoting *Mitsubishi Intern. Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1518 (11th Cir. 1994)) (When "'the remedy sought is the recovery of money (whether as collection on a debt or as damages),' a district court is powerless to grant preliminary injunctive relief…because the plaintiff's claims 'do not fall within the jurisdiction of equity.'") But prejudgment relief can be granted to "assure the availability of permanent relief" in claims for equitable relief. *Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995). Based on this, the Court could not grant Balanced Bridge's temporary restraining

order based on the claims for money damages—conversion, aiding and abetting breach of fiduciary duty, and unjust enrichment—but may be able to grant a temporary restraining order based on the claims for equitable relief. Because of this, the Court need only assess Balanced Bridge's likelihood of success on the merits of the AFTA and AUVTA claims.[3]

Both AFTA and AUVTA define situations where a transfer of property is fraudulent as to a creditor, which is a person with a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Ala. Code § 8-9A-1(3), § 8-9B-2(3). Under the Acts, a transfer is "fraudulent as to a creditor" when the transfer is made with "actual intent to hinder, delay, or defraud any creditor of the debtor." Ala. Code § 8-9A-4(a), § 8-9B-5(a)(1). The statutes list factors that suggest an intent to defraud, including: transfer to an insider, the debtor retaining possession and control of the property, and the debtor being threatened with suit directly before the transfer. Ala. Code § 8-9A-4(b), § 8-9B-5(b). In addition to actual intent of the parties, under both Acts a transfer is also "fraudulent as to a creditor" when the debtor did not receive "reasonably equivalent value in exchange"

---

[3] In addition to seeking equitable relief based on the alleged violations of AFTA and AUVTA, Balanced Bridge asks the Court to impose a constructive trust over the funds transferred to Danielle Spikes based on Balanced Bridge's alleged "property rights in and to" the funds. (Doc. 1 ¶ 8). However, Balanced Bridge fails to direct the Court to statutory or common law basis for this claim. Additionally, as discussed *supra*, the evidence currently before the Court suggests Balanced Bridge, under the precedent of *Andress*, does not have property rights in the class action award other than as security for a loan.

and the debtor was insolvent or "became insolvent as a result of the transfer." Ala. Code § 8-9A-5(a), § 8-9B-6(a).

It is unclear whether Balanced Bridge is a creditor under AFTA and AUVTA. If Balanced Bridge's agreement on June 4, 2024 to accept $680,000 as payment in full is enforceable, which is at issue in the existing arbitration and in the member case[4], then Balanced Bridge does not have a "claim" against Irving Spikes and is not a creditor under AFTA or AUVTA. However, if the June 4, 2024 agreement is not enforceable, then Balanced Bridge does have a claim—a "right to payment"—against Irving Spikes making Balanced Bridge a creditor under AFTA and AUVTA.

If Balanced Bridge is a creditor, there is evidence Balanced Bridge will likely succeed on the merits of its claim. According to AFTA and AUVTA, multiple factors can suggest an "actual intent to hinder, delay, or defraud." Transferring property to an "insider" (Ala. Code § 8-9A-4(b)(1), § 8-9B-5(b)(1)), the debtor retaining control of the transferred property (Ala. Code § 8-9A-4(b)(2), § 8-9B-5(b)(2)), the transfer following a threat of suit against the debtor (Ala. Code § 8-9A-4(b)(4), § 8-9B-5(b)(4)), and the transfer consisting of "substantially all of the

---

[4] The validity of the June 4 agreement is at issue in both the existing arbitration and in the member case. Balanced Bridge initiated the existing arbitration, captioned *Balanced Bridge Funding LLC v. Spikes* AAA No. 01-24-0005-9989, seeking "the remaining amount owed and damages" claiming that "any purported release [was] void due to duress and fraud in the inducement." (Doc. 1 ¶ 6). In count five of the member case, *Irving Spikes v. Balanced Bridge Funding LLC* 7:24-cv-00971, Irving Spikes alleges "[o]n or about June 4, 2024, Defendant [Balanced Bridge] represented to Plaintiff [Irving Spikes] that all claims Defendant had then or in the future could be settled for $680,000. At the time such representation was made, Defendant knew the representation was false because Defendant intended to file an arbitration proceeding as soon as it received the $680,000 from the Plaintiff." (Doc. 1 ¶ 5 in 7:24-cv-00971). There is a pending motion to compel Irving Spikes to bring all claims in the member case in the existing arbitration. (Doc. 20).

debtor's assets" (Ala. Code § 8-9A-4(b)(5), § 8-9B-5(b)(5)) all suggest an actual intent to defraud.

Several components of Irving Spikes's transfer to Danielle Spikes satisfy these factors relevant to finding an actual intent to defraud. First, as Irving Spikes's wife, Danielle Spikes is an "insider." Further, Irving Spikes's marriage to Danielle Spikes is arguably evidence that Irving Spikes retained control over the funds after the transfer. However, this implication of control over the funds is countered by evidence of Irving Spikes's mental incapacity. (Doc. 19-1 ¶ 2-4). Additionally, Irving Spikes may have transferred the funds to Danielle Spikes after Balanced Bridge pressured him to make payment. Balanced Bridge spoke with Irving Spikes and Danielle Spikes about payment on June 4, 2024. (Doc. 1 ¶ 5). On the same day, Irving Spikes transferred $470,000 to Danielle Spikes and then transferred an additional $40,000 to Danielle Spikes on June 17, 2024. *Id.* ¶ 6. It is unclear whether the June 4 transfer occurred before or after the phone call with Balanced Bridge. Finally, Balanced Bridge alleges the $510,000 transfer "caused [Irving] Spikes to become insolvent," thereby constituting a transfer of substantially all Irving Spikes's assets. (Doc. 1 ¶ 8). These facts collectively suggest that if Balanced Bridge is a creditor, Balanced Bridge will likely succeed on the merits of its claims under AFTA and AUVTA.

Turning to whether Balanced Bridge will suffer irreparable harm without this temporary restraining order. As stated above, when issuing prejudgment relief, courts consider the potential harm to occur between the court's decision on the prejudgment relief and the subsequent trial on the merits. *See Lambert* and *Walker*, *supra*. To warrant granting prejudgment relief, the harm must be irreparable, which means it could not be remedied with monetary damages, and more than mere speculation. *See City of Jacksonville*, *supra*.

In its complaint, Balanced Bridge asserts "actual and threatened dissipation of" the funds transferred to Danielle Spikes. (Doc. 1 ¶ 8). Further, in its letter to the Court fashioned as a Motion for Temporary Restraining Order[5], Balanced Bridge claims Danielle Spikes "has recently communicated, through counsel, her intention to use" the transferred funds "to purchase real estate." (Doc. 24 ¶ 1). If a temporary restraining order is not issued, Danielle Spikes may dispose of the disputed funds before the court can impose equitable remedies—such as the injunction or sequestration Balanced Bridge seeks—on the specific funds. But this alleged harm does not warrant prejudgment relief.

Balanced Bridge only alleges *speculative* harm. Arguing Danielle Spikes intends to purchase real estate with the transferred funds, Balanced Bridge admits

---

[5] It is unclear whether a copy of this letter was served upon the attorney for Danielle Spikes.

the "exact timing" of such a purchase "is unclear." *Id*. Other than these speculations as to Danielle Spikes's intentions, Balanced Bridge does not provide evidence of an "actual" or "imminent" threat of Danielle Spikes disposing of the transferred funds. *See Capstone Building Corp. v. Travis*, No. 2:24-cv-00578, 2024 WL 3542577 (N.D. Ala. May 9, 2024) (finding an imminent threat of irreparable harm to plaintiff's potential restitution recovery when a "central component in each of [the defendant's] schemes was concealment and deceit"); *see also BellSouth Telecomm. Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) (affirming preliminary injunction in part because the record contained evidence of plaintiff's specific losses—the loss of 3200 customers per week—pending final resolution); *Council v. Hamm*, No. 2:23-cv-658, 2024 WL 665666 at *8 (M.D. Ala. Feb. 16, 2024) (stating "despite the fact that [Plaintiff] may subjectively believe himself to be in grave danger, the objective evidence in the present record simply does not meet the demanding standard for preliminary injunctive relief."). Absent a showing of more than subjective belief, Balanced Bridge fails to show the alleged harm is not mere speculation.

Additionally, Balanced Bridge does not demonstrate how money damages could not remedy the alleged potential harm. In fact, Balanced Bridge's own citations suggest money damages *would* remedy any injury. In its Motion for Preliminary Injunction, Balanced Bridge quotes the Alabama Supreme Court: "[i]t

is well settled that the grantee in a fraudulent conveyance holds the property in trust, a constructive trust recognized and enforced in equity, on behalf of existing creditors of the grantor; that he [the grantee] disposes of same at his peril and is *personally liable* for the value thereof." *First Nat. Bank v. Love*, 232 Ala. 327, 332 (Ala. 1936) emphasis added. The Alabama Supreme Court soon after clarified "[i]f the [fraudulent] grantee, law imposed trustee, has disposed of the property, a court of equity will require her to account therefor, and, to the extent necessary to satisfy the pursuing creditor's claim, such grantee will be held liable for the full value of the property recovered by him." *Am. Nat. Bank & Tr. Co. v. Powell*, 235 Ala. 236, 246 (Ala. 1937). *See also Swan v. Magnusson*, 418 So.2d 844, 845 (Ala. 1982) (writing, in dicta, that "utilization of the proceeds from the sale of [the fraudulently transferred property] to acquire other real property…would impose upon the newly acquired property a resulting trust in his favor that may be enforced by prosecution…followed by execution, levy, and sale of that property."). Balanced Bridge's only other citation is to *Cotton Energy Corp.*, where an Alabama appellate court found the lower court erred by discharging the fraudulent grantee without requiring the grantee to "account for any proceeds (rents, income, profits, etc.) received from or through the [real] property during the time she held it." *Cotton Energy Corp. v. Smith*, 718 So.2d 1142, 1145 (Ala. Civ. App. 1998).

These cases suggest that, in Alabama, a creditor's recovery against a fraudulent grantee is not limited to the fraudulently transferred property. Because of this, Balanced Bridge's potential recovery would not evaporate if Danielle Spikes disposed of the disputed funds. Rather, if the transfer of $510,000 from Irving Spikes to Danielle Spikes was fraudulent and if Danielle Spikes purchased real estate with the transferred funds, Balanced Bridge may, if it is a creditor under AFTA and AUVTA, recover from Danielle Spikes or recover against the acquired real estate. Any potential injury Balanced Bridge faces between the time of the Court deciding the temporary restraining order and the Court deciding the preliminary injunction could be remedied with money damages, which would be available to Balanced Bridge.

Because it is unclear whether Balanced Bridge will succeed on the merits and because Balanced Bridge has failed to present evidence of an injury that is more than speculative and that money damages could not remedy, the Motion for Temporary Restraining Order is DENIED.

**DONE** and **ORDERED** on September 4, 2024.

　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　L. Scott Coogler
　　　　　　　　　　　　　　　　　　United States District Judge

220595